[S. F. No. 18887.   In Bank.   Feb. 25, 1955.]

MAX HOLSINGER, Respondent, v. ANNE HOLSINGER, Appellant.

Crist, Stafford & Peters and John M. Donegan for Appellant.

Freed & Freed and A. J. Cathcart for Respondent.

EDMONDS, J.—In 1950, Max Holsinger was awarded a decree of divorce from Anne Holsinger. By the final decree, they were given "the joint legal custody" of their two children, the mother to have "actual physical custody" of them, subject to certain rights of the father. Upon his application, these provisions were modified, and the mother's appeal is from the order enlarging his custodial rights.

The custody given to the mother in 1950 was subject to the conditions specified in a property settlement agreement. By that agreement, which was approved and confirmed by reference in the final decree, the father was given reasonable rights of visitation. A further provision made by the parties was that "if they have any disagreement with respect to said children, the instructions and directions of Wife shall in each such instance be followed the same as though Wife had the exclusive custody of said children."

The order of modification was made following a hearing at which both the father and mother testified in regard to the needs of the children. Other evidence also was presented. The record shows that Judith Ann is now about 12 years old. Thomas is two years younger. From the time of the commencement of the action for divorce until about two years after the date of the final decree, the parents, notwithstanding considerable quarreling, cooperated in providing for the education of the children. The mother acquiesced in the arrangements made for them by their father. Judith was placed in a boarding school especially suited to her individual needs. The boy, at that time of preschool age, went to the same school so that the two children might be together, although a different school would now be more suitable for him. At one time, the mother agreed that he might attend a public school, but later she refused to carry out that plan.

By mutual agreement, the father was allowed to have the children with him on alternate weekends.

The cooperation of the parents ceased in the fall of 1952, when Anne, accompanied by her mother, took the children from Max's home while they were visiting him. In a letter written by Anne to Max in October she said: "After battling the world for six years I am perfectly mature and capable enough to make up my own mind and I am tired of your constant interference. It has been a good training ground. I can make my own decisions."

Since the divorce action, the children have been living either at the boarding school or with the maternal grandparents. Anne testified that she expects to obtain employment and rent a larger place than the one which she now occupies. Her plan for the children is for Judith to continue in the boarding school and Thomas to enter public school. After school hours, he could go to the Community Center or to the boarding school until about five o'clock in the afternoon. Under that arrangement he would be at home alone until she could get there from her work.

The father has remarried and is living with his wife and 14-year-old stepdaughter. The report of the domestic relations investigator shows that this home, physically and environmentally, is very suitable for the rearing of the children.

Apparently much of the controversy has arisen because the mother refuses to acknowledge that Judith needs more than the usual educational program for children of her age. She resents Max's intellectual evaluation of the children and herself. She admitted to the investigator that there is great animosity between her relatives and Max. She is also quite bitter toward him. During her testimony the trial judge commented: "He has some rights to these children, too, you know, . . . [You] are trying to throw your venom against him, and you are using the two children as a shield. . . ."

The order granting the motion of Max for modification of the final decree of divorce gives the father and mother "the joint legal custody" of the children. The "actual physical custody" of the boy is to be with the father. The mother is to have reasonable rights of visitation, including that of having him with her on alternate weekends. Because of the special educational and developmental problems of the girl, the father "shall have the sole and exclusive authority to make arrangements for her boarding, educational and training program and situation." He is charged with the en-

tire financial responsibility for her care. The right of reasonable visitation is granted to both the father and the mother but the mother may have Judith with her on alternate weekends.

Anne contends that the evidence does not support this change of custody from her to the father. She argues that the trial court abused its discretion in making the order because there was no showing either that she is unfit or that there has been any change of conditions since the final decree. Other things being equal, she asserts, the custody of children of tender years should remain with the mother. Max insists that the order has substantial evidentiary support and there was no abuse of discretion in making it.

Neither parent is entitled to the custody of a child as a matter of right. "Under the statute (Civ. Code, § 138 (2)) each is equally entitled to custody and no showing or finding of unfitness is necessary to enable the court to award custody to one or the other in accordance with what, in its sound discretion, is deemed the best interests of the child." (*Davis* v. *Davis,* 41 Cal.2d 563, 565 [261 P.2d 729].) "It is the welfare of the child and not the shortcomings of the respective parties which is determinative." (*Clarke* v. *Clarke,* 35 Cal.2d 259, 262 [217 P.2d 401].)

"It is the settled rule that, in determining who should have the custody of the minor children of the parties to divorce actions, a very broad discretion is vested in the trial courts. It is only when a clear case of abuse of said discretion is made out that this court will interfere with the determination of the trial court on appeal." (*Prouty* v. *Prouty,* 16 Cal.2d 190, 191 [105 P.2d 295]; accord: *Gantner* v. *Gantner,* 39 Cal.2d 272, 275 [246 P.2d 923]; *Clarke* v. *Clarke,* 35 Cal.2d 259, 261 [217 P.2d 401].) "[T]he correct rule for a trial court to follow when considering the modification of a custody decree, is: 'The court, in revising and modifying its decree, proceeds upon new facts considered in connection with the facts formerly established, the change of circumstances, the conduct of the parties, and the best interests of the child.'" (*Prouty* v. *Prouty,* 16 Cal.2d 190, 195 [105 P.2d 295]; accord: *Davis* v. *Davis,* 41 Cal.2d 563, 565 [261 P.2d 729].)

The evidence amply supports the order modifying the custodial provisions of the decree of divorce. Unquestionably, since the decree was entered, the hostility of Anne towards Max has greatly increased. It reasonably may be

inferred that, because of her animus, she has refused to allow him to express anything but a financial interest in the children's future. It is also apparent that Anne does not have as great an understanding as does Max of the particular problems of Judith. Clearly, the mother's failure to appraise these problems correctly shows that she is not as well prepared as the father to cope with them.

In marked contrast to this conduct of the mother, the children's father at all times has endeavored to give them every advantage that will best prepare them for the future. His remarriage and maintenance of a home now makes it possible for him to give the children adequate care while in his physical custody. Upon the mother's refusal to allow him any further participation in providing for the education and care of the children, it became desirable, if not absolutely necessary, to order a change of custody.

The order is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.