[Civ. No. 22009.   Second Dist., Div. One.   Sept. 12, 1957.]

ETHEL FAULKNER, Appellant, v. J. ROBERT FAULKNER, Respondent.

Henry E. Kappler and Edmund M. Bluth for Appellant.

Millikan & Montgomery for Respondent.

WHITE, P. J.—By her first amended complaint, plaintiff wife sought a divorce on the ground of extreme cruelty. Defendant husband answered and by an amended cross-complaint prayed for a divorce on the same ground, to which plaintiff wife filed an answer. The pleadings also tendered the issue of division of community property, alimony and child support, and custody of the four minor children of the parties. After a contested trial the court awarded both parties a divorce as prayed for, divided the community property, awarded alimony and child support to plaintiff wife and awarded custody of the minor children as follows: Verenna, 16-year-old daughter to plaintiff wife, and defendant husband was awarded custody of Dennis Stephen, 13-year-old son; two daughters, Suzanne, aged 3 years, and Bonnie Larissa, 5 years of age. Each party was given the right of reasonable visitation with the children.

Plaintiff wife appeals only from that portion of the judgment awarding custody of the foregoing three minor children to defendant husband.

As grounds for reversal of the last mentioned portion of the judgment, plaintiff wife contends (1) that the evidence does not support the award of custody to defendant husband of the minors, "particularly of the two daughters of tender years"; and (2) that the trial court committed prejudicial error in refusing to set aside submission of the case and to reopen it for further evidence regarding the custody of the minor children.

Because of our belief that the last ground urged for reversal is determinative of this appeal, and requires a reversal of the judgment, we shall now proceed to a discussion and determination thereof.

With reference thereto, the record reflects that when taking of testimony was concluded and the cause argued by counsel on May 23, 1956, the court took the matter under submission and on June 4th filed a "memorandum decision" announcing its intention to grant to each party an interlocutory judgment of divorce and to award custody of the minor children as heretofore indicated. Counsel for defendant husband was directed to prepare findings and judgment in accordance therewith.

On June 12, 1956, plaintiff wife filed her motion to set aside the submission of the case and to reopen the same for further evidence, together with numerous (17) supporting affidavits and points and authorities, relating to the custody award of the three minors to defendant husband. No counter-affidavits were presented on behalf of defendant. The motion was argued by respective counsel on June 20, 1956, and denied the same day. Thereafter, on June 21, 1956, findings of fact and conclusions of law and ''Interlocutory Judgment of Divorce'' were signed and filed, the judgment being entered June 25, 1956. ▉ While the foregoing order is not directly appealable, its propriety may be inquired into on an appeal from the judgment (*Casner* v. *Daily News Co., Ltd.*, 12 Cal.2d 402, 404 [84 P.2d 1032]; *Winkler* v. *Winkler*, 54 Cal.App.2d 398, 403 [129 P.2d 43]).

We do not deem it necessary to here set forth in detail the testimony adduced at the trial because of the single issue presented to us on appeal, viz., custody of the children. Suffice it to say the evidence shows that the parties herein married August 1, 1938, and thereafter lived together for more than 16 years. That insofar as the three children involved in this appeal are concerned, the evidence conclusively showed that both parents were deeply attached to said children, and that affection was reciprocated. There is no evidence of parental neglect on the part of either parent. Plaintiff wife went about her household duties, was a member of the P.T.A. and saw to it that the younger children were, as one witness testified, ''well dressed and showed well grooming.'' Defendant father was also extremely kind toward the younger children. He would take them on evening walks and was constantly solicitous for their welfare. As to plaintiff wife, there is evidence that she liked to attend dances, that her husband objected thereto, and that on New Year's Eve, 1954, or early in 1955, plaintiff met a man at a studio dance, continued to see him thereafter, and on some occasions, ''went out with him.'' When this was reported to defendant husband he resented such conduct and remonstrated with her. The extent of these claimed clandestine meetings was the subject of conflicting evidence. ▉ Conceding however, that under the oft repeated rule, the power of an appellate tribunal begins and ends with a determination of whether there is substantial evidence, contradicted or uncontradicted, or reasonable inferences to be drawn from such evidence, to support the findings and judgment of the trier of facts, and that therefore, the

conclusion of the trial court should not be disturbed, nevertheless, in divorce actions involving custody of minor children the fullest possible inquiry should be made to the end that the paramount issue, viz., the best interest and general welfare of the children may be conserved.

With regard to the custody of minor children, the public policy of this state is declared in section 138 of the Civil Code, which in part provides, ". . . In awarding the custody the court *is to be guided* by the following considerations:

"(1) By what appears to be for the best interest of the child in respect to its temporal and its mental and moral welfare; and if the child is of a sufficient age to form an intelligent preference, the court may consider that preference in determining the question;

"(2) As between parents adversely claiming the custody, neither parent is entitled to it as of right; *but other things being equal, if the child is of tender years, it should be given to the mother; if it is of an age to require education and preparation for labor and business, then to the father."* (Emphasis added.)

That the two daughters, Bonnie, aged 5, and Suzanne, aged 3, are children of "tender years" cannot logically or legally be questioned.

In the instant proceeding the court made no finding that plaintiff mother was an unfit person to have the custody of these children. Indeed, the fact that the court awarded custody of the 16-year-old daughter to plaintiff wife would seem to negative any aspersion on the character of the mother as an unfit person to safeguard the "mental and moral welfare" of her children. ▓ While it is well settled that the court is not required to find one parent unfit before it can award the child to the other parent, and that the paramount question to be decided is how the best interest of the child will be preserved (*Taber* v. *Taber,* 209 Cal. 755, 756 [290 P. 36]; *Matter of Cozza,* 163 Cal. 514, 526 [126 P. 161, Ann. Cas. 1914A 214]; *Lampson* v. *Lampson,* 171 Cal. 333 [153 P. 238]; *Holsinger* v. *Holsinger,* 44 Cal.2d 132, 135 [279 P.2d 961]) nevertheless, where custody of minor children is involved, the practice applicable to such an issue differs in many respects from those which govern other issues. ▓ If this were an ordinary action in which a money judgment was being sought or property rights were being adjudicated, respondent's argument that the proffered testimony offered by appellant on her motion to set aside submission and reopen the case

for further evidence, would amount only to cumulative evidence, might be regarded as very persuasive, but when the custody of children is involved, a motion such as the one now engaging our attention should be examined, not only in accordance with legal principles, but in accordance with the ends of justice, and every available avenue of information available to the court should be explored, to the end that the best interest and welfare of the children might be considered in the light of the fullest possible inquiry. Any inadvertence of counsel should not deprive the children of an order that would fix their custody in accordance with a judicial decree based on all available evidence.

In support of her motion to set aside submission of the case and to reopen it for further evidence, appellant wife submitted some 17 affidavits, the makers of which would testify personally if the motion was granted, and none of which were denied by counteraffidavits. Included in the affidavits was one by an attorney at law who had been a close neighbor of the parties for some five years, and in which the deponent attested to appellant wife's "kindness and consideration for her children"; his personal observation of her even-tempered disposition and of her activities in constantly caring for the well-being of the children. In another affidavit the deponent stated she had known appellant wife some six years; that on several occasions the oldest daughter, Verenna, came to deponent's home in fear that her father (respondent) would "beat her up again"; that respondent husband has a "terrific, uncontrollable temper" and that "there is no reasoning with him when he is mad"; that appellant wife is even-tempered, understanding, gets along well with others, loves her children, and that they love her.

The next door neighbor of the parties averred that the children have always been well mannered, "well kept and clean"; that appellant wife has always been a loving mother to the children, entertains the youngest ones by reading and telling stories to them; she walks daily to kindergarten with Bonnie, does not leave them alone, and is well liked by the other children in the neighborhood; and also stating that she (affiant) has seen the two small children come home from walks with their father at night and running ahead of him, calling for their mother.

In another affidavit was the statement that the affiant had acted as "baby sitter" for plaintiff wife on two or three occasions when the latter was required to appear in court;

that when appellant wife returned to "pick up" the children and met defendant husband on the sidewalk, they clung to plaintiff wife's hands and would not let go, "appearing to be afraid to go to their father"; that when affiant was in their home, the children seemed frightened and upset when the father was there, especially the son, Dennis; that appellant wife is devoted to her children and always puts them first and their actions show they love her very much; "they are kept clean, well mannered and she has trained them excellently."

In an affidavit from another neighbor was contained the sworn statement that at all times appellant wife was a "loving, considerate mother to her children, very understanding to their needs and always watching out for their welfare"; plaintiff helps with the Cub Scout and school activities and is sincere in her efforts to keep her children interested in various activities that will make them good citizens; the affiant has never seen respondent husband at any of the school or Cub Scout events nor did she know that he took any interest in the children's activities.

Another affidavit set forth that appellant wife "has always been an excellent person of good morals and a loving mother, very good and considerate to her own children, and to the neighborhood children that come to her home; she has seen plaintiff stop her housework to play games with and teach her children the correct way to play; plaintiff is a proven friend of all the children in the neighborhood."

Another affidavit attested to the loving care and affection lavished by appellant wife upon the children; that respondent husband "has a vile and nasty temper and becomes dangerous when antagonized or crossed." To quote from the remaining affidavits would serve only to emphasize the foregoing sentiments as to appellant wife's moral reputation and her maternal love and affection for and care of the children.

When the instant proceeding was before us on an application for a writ of supersedeas (*Faulkner* v. *Faulkner*, 148 Cal.App.2d 102 [306 P.2d 585], we stated, at p. 108, "Certainly it appears to us that it would have been better practice, and certainly more in the interests of the welfare of the children, for the court to have reopened the case for the purpose of hearing the additional testimony—in other words, the court should have been interested in getting all of the information and testimony possible bearing upon what was for the best interests of the children, assuming, of course, that

the testimony to be introduced was not merely cumulative.'' A review of the record in this case which has since been lodged in this court confirms the views just expressed and persuades us that under the circumstances presented by the record herein, that at least insofar as the custody of the two youngest children is concerned, and in the light of the provisions of section 138 of the Civil Code, the trial court should have granted appellant wife's motion to set aside submission of the case and to reopen it for further evidence regarding the custody of the minor children, upon the showing made by the *undenied* affidavits presented in support of said motion, and that the court's refusal so to do amounted in this case, to an abuse of discretion (*Winkler* v. *Winkler, supra,* 54 Cal.App. 2d 398, 404). We cannot say that a different decision might not then have ensued. (See also *Black* v. *Black,* 149 Cal. 224, 226 [86 P. 505] ; *Van der Vliet* v. *Van der Vliet,* 200 Cal. 721, 723 [254 P. 945], all illustrative of the court's deep interest in and concern for the best interests and welfare of the children involved in a divorce action who, while they are not parties to the action, should have their best interest and welfare protected; and of the court's duty to avail itself of all possible information obtainable that might light the way for a judicial decree that will protect and preserve their best interests as to their ''temporal . . . mental and moral welfare'' (Civ. Code, § 138).)

For the foregoing reasons, that portion of the judgment appealed from is reversed, and the cause remanded with directions to the court below to grant appellant's motion to reopen the case for further evidence regarding the custody of the minor children.

Fourt, J., and Drapeau, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.