[Civ. Nos. 25820, 26188.   Second Dist., Div. Three.   Nov. 23, 1962.]

GERALDINE R. CODDINGTON, Plaintiff and Appellant, v. KENNETH R. CODDINGTON, Defendant and Respondent.

A. Richard Backus and William C. Hiscock for Plaintiff and Appellant.

David C. Marcus for Defendant and Respondent.

FILES, J.—Number 25820 is an appeal from an order made August 24, 1961, changing custody of an 11-year-old girl from sole custody of the mother to joint custody, and giving physical custody to the father during the school year 1961-62.

Number 26188 is an appeal from an order refusing to order defendant to pay additional counsel fees to plaintiff's attorneys.

The parties married May 25, 1949, and their daughter, Linda, was born April 18, 1950. In 1954 plaintiff obtained by default an interlocutory decree of divorce whereby she was awarded custody of Linda. The final decree was entered a year later. In 1956 plaintiff married her present husband and in 1959 moved to Citrus Heights, an unincorporated community in Sacramento County, where the husband had employment. Their household included four children: Linda, two daughters of the husband by a previous marriage, and an older son of plaintiff by an earlier marriage.

In late 1958 or early 1959 defendant married his present wife and established a home in San Gabriel. She has no children.

In November 1960 plaintiff obtained an order to show cause for an increase in support for Linda and for a specific delineation of defendant's visitation rights. Thereupon defendant obtained an order to show cause *re* change of custody. Defendant requested that Linda spend one-half of each year with each parent, so that she might attend school in San Gabriel for one semester each year, so that her "learning habits may be improved." The two applications came on for hearing

December 6, 1960, before Judge pro tempore Heublein. After testimony had been taken, the court made an order ''by stipulation'' modifying the interlocutory decree so as to provide for physical custody of the minor with defendant during certain vacation periods only. The order also increased the support payments.

In June 1961 Linda came to San Gabriel to spend a part of the summer with her father, as provided in the order. While she was there, defendant obtained a new order to show cause why the physical custody of Linda should not be awarded to him. A hearing was held before Judge Lucas on August 23 and 24, 1961, after which the court made the order which is the subject of the present appeal. This order provided that the divorce judgment be modified in the following respects, among others: Legal custody of Linda was awarded to plaintiff and defendant jointly. Physical custody was awarded to defendant from September 9, 1961, to June 16, 1962, except for specified periods during Christmas and Easter vacations. The matter was continued to July 5, 1962, for further proceedings. The order also contained detailed provisions relating to support, transportation expenses, and other matters not here pertinent. Defendant was ordered to pay a fee of $100 to plaintiff's attorneys.

Plaintiff asked the trial court for a stay pending appellate review, but the request was denied. Plaintiff then petitioned this court for a writ of supersedeas, which was denied without opinion.

The notice of appeal indicates an appeal from the entire order. In her briefs plaintiff is attacking only the change of custody and the inadequacy of the attorneys' fee.

Before this appeal could be heard on its merits, respondent on July 30, 1962, filed a motion to dismiss the appeal on the ground that it was moot. A declaration filed in opposition to the motion states that on July 12, 1962, a further hearing was held before Judge Lucas and oral testimony was taken. An order was then made giving defendant father physical custody of Linda during the 1962-63 school year, and continuing the matter for further hearing on June 25, 1963. The declaration further states that an appeal from that order has been taken. However, the record has not yet reached this court.

The appeal is not moot. The order of August 24, 1961, which is the subject of this appeal, changed the custody of Linda from the mother to the parents jointly, for the purpose

of facilitating a year-to-year supervision of her physical placement. This arrangement is still in effect, and plaintiff is properly in this court to attack it. Moreover, with respect to the inadequacy of counsel fees, the appeal clearly is not moot.

At the 1961 hearing the court heard testimony from both parents and both stepparents and interviewed Linda out of the presence of the parties but in the presence of the court reporter. The evidence was not in substantial conflict except for the views of the respective witnesses as to what is best for Linda. The evidence most favorable to defendant may be summarized as follows: Both parents and both stepparents love Linda and she loves them. Linda is a normal, healthy, well adjusted child, who has no special problems except that she is below grade level in reading. There is no suggestion that any of the four adults lacks any of the qualities of a devoted parent, or that either home is lacking in any basic requirement. While with her mother, she is a member of a family of six in a three-bedroom home in a semirural community. This family lives on a total take-home income of about $900 monthly, including child support. Linda shares a bedroom with her two stepsisters.

Her father lives in a new home in San Gabriel where Linda has her own bedroom and bath. There is a swimming pool. Defendant is a partner in a small business, from which he draws $1,200 per month for living expenses. During the summer of 1961 Linda was enrolled in a San Marino public school where she took a reading course and received a grade of A—. Her stepmother worked with her during the summer to help her with her reading. The stepmother planned to continue to work with Linda to improve her schoolwork throughout the school year.

At the end of the 1961 summer session in San Marino Linda was tested and showed a reading grade level of 3.7. This indicated that she was below a norm established for fourth grade pupils. Although Linda had completed the fifth grade at Citrus Heights in June 1961, it was planned to have her repeat the fifth grade in San Marino in the 1961-1962 school year.

When interviewed by the judge, Linda expressed her approval of all four of the adults, but did not say anything that could be construed as indicating a real preference of one home over the other. She did tell the judge, "I will stay down here and get my reading better because the school right around the

corner from us is about the best school in San Gabriel. That is what Kay told me.''

The statutory standard for awarding custody of a minor child is set forth in Civil Code, section 138: The court is to be guided by what appears to be for the best interests of the child; and, other things being equal, if the child is of tender years custody should be given to the mother.

In determining whether other things are equal within the meaning of this rule the trial court is necessarily allowed a wide latitude in exercising its discretion. Its discretion will not be reversed on appeal unless the record presents a clear case of abuse. (*Goto* v. *Goto*, 52 Cal.2d 118, 123 [338 P.2d 450]; *Munson* v. *Munson*, 27 Cal.2d 659 [166 P.2d 268].)

Plaintiff's appeal rests on her contention that the trial court abused its discretion, in that the evidence does not support any grounds for change of custody.

There is no fixed scientific formula for the care of children, and no one standard of what constitutes a child's best interests. Necessarily, the judge whose duty it is to make such a decision views the matter in the light of his own attitude and experience, realizing as he must that someone else, equally wise, might see the matter differently. In this case the trial court expressed no reasons for its decision. Before announcing the ruling the court said: ''I might make some comment on the evidence, but I am not going to. Nice people, all sincerely interested in the little child, all wanting her. I can't give her to both, so here is the order.''

The frustration of an appellate court, when asked to review the decision of the trial judge in a custody case, was eloquently described by Justice Duniway in *Stack* v. *Stack*, 189 Cal.App.2d 357 [11 Cal.Rptr. 177]. What was said there about the legal and practical aspects of the problem is fully applicable here.

We are not impressed that the privileges of an only child in the luxurious San Gabriel home would be so much better for Linda than sharing the more crowded Citrus Heights home with her mother and stepsisters and half-brother. There may be more merit in the hypothesis that Linda's apparent progress in reading during the summer session, under the supervision of her stepmother, indicated the desirability of continuing this regime for a full year in order to try to overcome a serious reading handicap.

Skeptical though we might be, we are mindful that weighing the evidence and exercising discretion are the functions of

the trial judge. Where minds may reasonably differ, it is his discretion and not ours which must control. Moreover, the trial court saw and talked with the principals, and was able to obtain impressions which cannot be communicated in an appellate record.

The order made by the trial judge was clearly experimental, calling for a reexamination one year later. We are impressed by the absurdity of our attempting, after the year is over, to judge the wisdom of the experiment without knowing anything of the results. Linda is now well into her second school year in her father's home. A reversal would not undo what has occurred. Any direction which this court could now give would be purely negative. Not knowing the present circumstances, this court could not, on the 1961 record, offer its advice on what next should be done. At most, a reversal would bring the parties back for another hearing and a reweighing of the imponderables.

If the record showed that Linda had been placed in a situation which appeared clearly detrimental to her, it would be a simple matter to reverse the order, notwithstanding the lapse of time. But this is not a case in which we can say that the trial court's order was or is likely to harm the child. Nor could we say with any confidence that the trial judge was not right in thinking that the San Gabriel experiment would be highly beneficial to her.

Plaintiff relies upon *Washburn* v. *Washburn*, 49 Cal.App.2d 581 [122 P.2d 96], where an order changing custody from the mother to the father was reversed. The principal issue was the fitness of the mother, and the opinion discusses at length the principles of law which are involved. The order was reversed, however, not because of insufficiency of the evidence, but because the trial court had based its decision in large part upon an investigator's report which was inadmissible hearsay. Nothing in that case calls for a reversal here.

As a part of the order of August 24, 1961, the trial court directed that defendant pay plaintiff's attorneys $100. ▮ The amount to be allowed as attorneys' fees under Civil Code, section 137.3 is also one to be determined in the exercise of a sound discretion by the trial court, but it is a subject on which we are better able to correct an injustice. ▮ The record shows that the plaintiff's case was well prepared and ably presented. Plaintiff lacks funds, and defendant is well able to pay. In court, counsel spent a half

day waiting to be heard, a half day in trial, and then a second half day of trial. Substantial time must have been devoted to preparation for the trial, and in consultations with their client both before and after the trial. A fee of $300 appears reasonable under the circumstances.

On September 8, 1961, plaintiff's attorneys made a motion for an order augmenting the award of fees for services in the trial court and for an allowance of fees and expense money for an appeal. The court ordered payment of fees and expenses on appeal, but denied any further award for services in the trial court. Defendant then appealed from this order insofar as it allowed fees for the appeal, and plaintiff took a cross-appeal from the order insofar as it denied additional compensation for trial services. Defendant failed to file a brief and his appeal was dismissed on July 5, 1962. In view of the decision in the appeal from the order of August 24 (Number 25820), plaintiff's appeal from the September 8 order (Number 26188) is now moot, and must be dismissed on that ground.

The order in Number 25820 is modified in that defendant is ordered to pay to plaintiff's attorneys an additional $200, making a total fee of $300; and as so modified, the order is affirmed.

In Number 26188 the appeal is dismissed. Appellant shall recover her costs in Number 25820 except to the extent that such costs have been or can be paid out of the expense money which the trial court allowed by its order of September 8, 1961. Neither party shall recover costs in Number 26188.

Shinn, P. J., and Ford, J., concurred.