[Civ. No. 27191. Second Dist., Div. Four. Oct. 30, 1963.]

JAMES R. BRISCOE, Plaintiff and Respondent, v. MARJORIE L. BRISCOE, Defendant and Appellant.

Gilbert, Thompson & Kelly and Jean Wunderlich for Defendant and Appellant.

Darling, Shattuck, Hall & Call and Thomas F. Call for Plaintiff and Respondent.

JEFFERSON, J.—In 1957 Marjorie Briscoe was awarded an interlocutory decree of divorce from James R. Briscoe.

The decree gave custody of their child, James Christopher Briscoe (hereinafter referred to by the name by which he was generally known, "Chris"), to the mother. The father was given reasonable rights of visitation and required to pay child support. In 1958 the decree became final. Thereafter, plaintiff father sought a modification of custody provisions of the decree. The trial court, however, by order dated January 16, 1959, provided the custody of the boy would remain with the mother. On September 27, 1962, the order of January 16, 1959, was modified, the court declaring that the best interests of the child require that his custody be awarded to the plaintiff father, with the mother being given certain enumerated visitation rights. Defendant mother appeals from the latter order.

The order of modification was made following two hearings, the first on April 12, 1962, and the second, September 13, 1962. Pursuant to stipulation, the court, on the date of the first hearing, temporarily and without prejudice awarded the parties joint legal custody of the child. Chris became 11 years old on August 11, 1962.

At some time after the parties' divorce decree became final in 1958, the mother remarried and took the boy to Minneapolis to live. The father testified that the mother had telephoned him several times from Minneapolis asking him to come and pick up the boy as she did not want to have the boy around because of the fighting and drinking that went on in the Minneapolis home of the mother and stepfather. She advised the father the boy was "flunking out" of school; he was unhappy and all he wanted to do was to come to California and live with the father.

On September 15, 1961, pursuant to an agreement between the parents, Chris came to California to live with his father, who then resided in Los Angeles. His school grades improved substantially over those he had received while living with his mother. (While living with his mother he had failed both the first and fourth grades.)

The father testified that Chris lived a happy well-adjusted life with him; that he has not remarried, is semiretired, and is able to devote sufficient time to his son to give him all necessary love and affection. At the time of the second hearing the father had moved to Santa Barbara and was occupying a two-bedroom duplex apartment. The father further testified his parents also live in Santa Barbara and the boy likes them and has made many friends in Santa Barbara. He as-

serted the change of custody proceedings were instituted by him at the request of Chris, who said he wanted to stay with the father in California.

 Evidence was presented that the relationship between Chris and his mother was unsatisfactory due to domestic difficulties between the mother and her new husband. On one occasion in 1961, while the mother was intoxicated, she became angry at Chris and screamed at him "You little bastard," causing the boy to burst into tears. On another occasion in 1961, while driving with the father and Chris, she became angry and told Chris, "God damn you, I will take you back to Minnesota."

Pursuant to agreement between both counsel the court interviewed Chris alone at both the first and second hearings. Thereafter, the testimony of the boy was taken in the judge's chambers under questioning of the judge and both counsel, and out of the presence of the parents. The boy expressed a preference to live with his father stating his father helps him with his studies, engages in sporting events with him, keeps his clothes clean, cooks for him, takes him and his friends on trips and flies kites with him.

Chris stated his mother embarrasses him by constantly criticizing him in front of his friends; she yells at him and pushes him around; she had on occasions threatened him and on one occasion, choked and slapped him when she became angry even though he had not done anything wrong. She told him that if he continued to live with his father she would never see him again. When he told his father this, his father told Chris that she was just bluffing. Following a quarrel between the mother and her new husband during which they were screaming at each other, the mother awakened Chris at 3 a.m. and took him downstairs to her bedroom. There, in the boy's presence, the mother and stepfather continued screaming at each other and both pushed the boy. He saw broken glass on the floor at the time. Other instances of arguments which kept the boy awake at night were recounted as were other incidents in which the mother unjustly criticized him and called him "bad names," the meaning of which he did not know.

According to the mother's testimony she never used profane language in speaking to Chris, and at no time did she ever strike or beat him. She stated that she and her present husband have now taken up a permanent residence in La Jolla, California, where they are renting a home with an

option to buy; that during the period between the first and second hearing when Chris lived with them in La Jolla, he appeared happy. They played tennis together. He liked his stepbrother and stepsister and got along well with them.

Defendant mother contends the trial court erred in making the change of custody order because no material change of conditions was shown to have occurred since the time the previous order was made. It is also argued that the change of custody order was not in the best interests of the child and therefore the court abused its discretion in making the order.

At the outset, it must be recognized that neither parent is entitled to the custody of the child as a matter of right. (*Holsinger* v. *Holsinger*, 44 Cal.2d 132, 135 [279 P.2d 961].)

"Under the statute (Civ. Code, § 138, subd. (2)) each is equally entitled to custody and no showing or finding of unfitness is necessary to enable the court to award custody to one or the other in accordance with what, in its sound discretion, is deemed the best interests of the child." (*Davis* v. *Davis*, 41 Cal.2d 563, 565 [261 P.2d 729]; and quoted in *Holsinger* v. *Holsinger, supra,* 44 Cal.2d 132, 135.)

It is well settled that, as stated by the Supreme Court in *Foster* v. *Foster,* 8 Cal.2d 719, 730 [68 P.2d 719]: "An application for a modification of an award of custody is addressed to the sound legal discretion of the trial court, and its discretion will not be disturbed on appeal unless the record presents a clear case of an abuse of that discretion. [Citations.]"

"In decisions too numerous to mention, it has been said that the trial judge having heard the evidence, observed the witnesses, their demeanor, attitude, candor or lack of candor, is best qualified to pass upon and determine the factual issues presented by their testimony. And this is especially true where the custody of minor children is involved. An appellate tribunal is not authorized to retry the issue of custody, nor to substitute its judgment for that of the duly constituted arbiter of the facts. Only upon a clear and convincing showing of abuse of discretion will the order of the trial court in such matters be disturbed on appeal." (*Currin* v. *Currin,* 125 Cal.App.2d 644, 651 [271 P.2d 61]; see also *Wood* v. *Wood,* 207 Cal.App.2d 33, 36 [24 Cal.Rptr. 260].)

In *Coddington* v. *Coddington,* 210 Cal.App.2d 96 [26 Cal. Rptr. 431], the court, in upholding an order transferring physical custody of an 11-year-old girl from her mother to

her father, stated at page 101, "Where minds may reasonably differ, it is his [the trial judge's] discretion and not ours which must control."

█ The argument made by defendant that the trial court erred as a matter of law in changing custody because no finding was made that a material change of conditions had occurred since the time of the court's previous custody order, assumes that the rule requiring a change of circumstances or conditions, is a rule without exception. It is not, however, an "iron-clad" rule but is subject to exception, where, even though no change of conditions has been shown, the welfare of the child requires that the previous order be changed. (*Harris* v. *Harris*, 186 Cal.App.2d 788, 792 [9 Cal.Rptr. 300]; *Foster* v. *Foster, supra*, 8 Cal.2d 719, 728-729.)

"Following the trend, first suggested in the Foster case, *supra*, 8 Cal.2d 719, courts have been liberal in the application of the 'change of circumstance' rule; it has not been applied where it can be assumed both parents were found fit [citation]; nor where the trial court has modified the custody decree. [Citation.]" (*Harris* v. *Harris, supra*, 186 Cal.App. 2d 788, 792.)

█ We are convinced in the instant case, the trial court was plainly justified in concluding from the evidence presented that the best interests of the child would be served by ordering the change in custody. There was evidence that the mother's conduct toward her son disclosed neither the wholesome environment nor the exemplary behavior required of a mother. █ "Fitness to have the custody of a minor child requires more than affection and the ability to properly feed, clothe and house the child. It also requires an environment which will not be detrimental to the character and morals of the child." (*Reynolds* v. *Reynolds*, 149 Cal.App.2d 409, 413-414 [308 P.2d 921].)

█ Defendant contends that the trial judge should not have given any weight to the testimony of the boy because, according to defendant, "It is patent that the boy did not have a sufficient age nor was he capable as appears from the evidence to form 'an intelligent preference'."

The record disclosed the boy was interviewed alone by the judge at both the April 12, 1962, and September 13, 1962, hearings pursuant to stipulation by counsel for both parents. Further, prior to the giving of testimony by the boy, defendant's counsel laid a complete and exhaustive foundation as to

his qualifications to testify. We are of the view that defendant thereby waived any objections to the competency of the testimony of the boy. Further, since no objection was made at the trial, it cannot now be raised for the first time on appeal.

The order is affirmed.

Burke, P. J., and Kingsley, J. concurred.