[Civ. No. 7832. Third Dist. May 8, 1951.]

AIMEE LYNETTE BROWN, Appellant, v. HARRY DANIEL BROWN, Respondent.

Mark M. Brawman for Appellant.

Tebbe & Correia for Respondent.

ADAMS, P. J.—Plaintiff and respondent were formerly husband and wife, residing in Dunsmuir. On May 10, 1944, Mrs. Brown filed an action for divorce, and on May 29, 1944, an interlocutory decree was entered in her favor, which decree confirmed a settlement agreement between the parties which provided that Mrs. Brown should have custody of the daughter and son of the parties, aged 2 and 1 years, respectively, with certain provisions regarding visitation rights and payments by defendant for support of the children. On April 2, 1945, a stipulation signed by the parties to the action was filed, which agreed that the custody of the children should be awarded to the father, with rights of visitation by Mrs. Brown, and a provision that she should have the children visit with her during the summer vacations, during which time defend-

ant should pay her $60 per month for their support. This stipulation at least impliedly requested the court to award the custody to Mr. Brown; and the court modified the interlocutory decree to conform to the stipulation.

On or about June 10, 1945, Mrs. Brown married Lee Cool, with whom she lived until October 30, 1945. That marriage was annulled December 3, 1945, it having been consummated before the final decree of divorce from Brown. In the meantime Mrs. Cool had gone to Oregon.

On July 16, 1945, on application of Mr. Brown, the final decree of divorce was entered, and the orders for care and custody contained in the amended interlocutory decree were repeated therein.

Mrs. Brown, on February 11, 1946, married Kenneth Smith, her fourth husband, and thereafter resided in Portland, Oregon. In June, 1948, she and her husband came to Dunsmuir and took the children from Mr. Brown's home during his absence, and carried them to Portland, ostensibly for the summer vacation period, as provided in the amended interlocutory and final decrees. The record shows that they were taken while negotiations were still pending between her attorney and Mr. Brown's counsel for her to give a bond to return them to California at the end of the vacation. In Oregon she filed an action seeking custody of the children. Mr. Brown was served with process in Dunsmuir, but did not appear. However, in August of that year, before a decision of the Oregon court had been rendered, Mr. and Mrs. Slimmer, the father and mother of Mrs. Brown, went to Portland. There Mr. Slimmer picked the two children up off the street and returned with them to Dunsmuir.

Thereafter, on September 8, 1948, the Oregon court entered a decree which purported to modify the final decree of the California court so as to award the custody of the children to the mother, stating that their best interests and welfare demanded that they stay within the State of Oregon, and providing that neither party should remove them therefrom; that the children should be returned to the jurisdiction of that court and that until they each reached the age of 21 years their father should pay the sum of $50 per month for their support; and that the father might apply to that court for rights of visitation. There was also a statement in the decree that the mother was in all respects a fit and proper person to have the custody of the children.

On September 1, 1948, after the children had been returned

to Dunsmuir, Mr. Brown filed in the original divorce action a motion for an order modifying the final decree of divorce to provide that Mrs. Brown (then Smith), her husband, agents, etc., be restrained from removing the children from his custody or from the State of California, and that he (Brown) be awarded the sole custody of the children; and that Mrs. Brown be enjoined from proceeding in or maintaining any action for the custody of the children in any other state. Mrs. Brown appeared in that proceeding and filed a notice of motion to modify the final decree to award the custody of the children to her, and permit her to take them to and keep them in Oregon. On October 19th she filed notice of additional grounds for her motion, setting up the Oregon decree; and on November 10th she filed a notice of motion for an order vacating the order modifying the original interlocutory decree, and vacating the custodial provisions of the final one. Affidavits were filed by the parties in support of their respective motions.

On February 28, 1949, the court began hearings on the aforesaid motions. Testimony was adduced by both parties, and on March 9, 1949, a judgment was made and entered confirming the custody in Mr. Brown, with the right of Mrs. Brown to have the children with her during the school summer vacations, but prohibiting her from taking them out of California, and enjoining all persons from so doing. In the court's order it was found that the best interests of the children would be served by awarding their custody to their father. It recited that when they were 2 and 3 years old Mrs. Brown, in order to live her own life undisturbed by the responsibilities of their care, had delivered them to their father, that the evidence showed that she was afflicted with epilepsy and might suffer further attacks, and that she was not, and had not been since February 15, 1945, a fit and proper person to have custody of the children, and that Mr. Brown was such a fit and proper person.

From that decree Mrs. Brown has taken this appeal. Appellant's first contention is that the order of modification of the interlocutory decree, made on April 2, 1945, is void, and should have been set aside on her motion because she was given no notice of the time and place of making application therefor. This contention is without merit. In *Tiffany & Co.* v. *Spreckels*, 202 Cal. 778, 791 [262 P. 742], the court said: "Parents have a legal right to contract with each other as to the custody and control of their offspring (*Sargent* v.

*Sargent,* 106 Cal. 541 [39 P. 931]; *Anderson* v. *Anderson,* 56 Cal.App. 87 [204 P. 426]; *Van der Vliet* v. *Van der Vliet,* 200 Cal. 721 [254 P. 945]). This right, however, is subject to the control of the court in proceedings wherein the welfare of the child is involved (*Black* v. *Black,* 149 Cal. 224 [86 P. 505]). But as between the parents, themselves, a promise by one parent that the other may have the custody and control of their child is legal and is a sufficient consideration to support an agreement on the part of the parent in whose favor the promise is made." Also see *Puckett* v. *Puckett,* 21 Cal.2d 833, 839-840 [136 P.2d 1].

Appellant relies upon *In re Saunders,* 76 Cal.App.2d 635, 637 [173 P.2d 818], as holding that notice is required; but in that case there was no stipulation.

█ In the case before us the "stipulation" between Mr. and Mrs. Brown was not merely an agreement between the parties. It was entitled in the divorce proceeding, and it provided that the custody of the children "be awarded" to Mr. Brown "pending further action of the above-entitled court." Thus it was obviously intended to be presented to the court for its action thereon, and Mrs. Brown was well aware of this. Furthermore, she turned the children over to Mr. Brown and left the state, and not until three years later did she seek to have them with her, and then only for the vacation period provided for in her stipulation and the order of the court. We think these facts sufficiently establish that she well knew and intended that the court was to act upon the stipulation, and consented that no further notice to her was to be given or expected.

█ The second contention of appellant is that the court erred in failing to give full faith and credit to the Oregon decree. In view of the fact that the Oregon decree failed to give full faith and credit to the California decree which, as amended on stipulation of the parties, awarded the custody of the children to their father, appellant's contention is somewhat inconsistent. We also think that the decisions upon which appellant relies are equally applicable to the situation presented at the hearing in California. The children were then in California with their father, who, under the California decree, was legally entitled to their custody. Appellant appeared in the recent proceeding, and testimony was adduced by both parties. The parents of Mrs. Brown testified in support of Mr. Brown, as did her brother and one of her former husbands. The evidence showed that for about three years

Mrs. Brown left the children with their father, and that when in 1948 she took them to Oregon she knew that she had no right to retain them after the summer vacation when she should have returned them to Dunsmuir. Their domicile in Oregon was at most, if it constituted domicile at all, only temporary. If that was, as she claims, sufficient to give the Oregon court jurisdiction, their presence in California after their return was sufficient to give jurisdiction over them to the Siskiyou County court. If any showing of change of circumstances, during the period which elapsed after the interlocutory decree was amended to give custody to the father and the present hearing was necessary, there was ample evidence to show it. There was also ample evidence to sustain the court's finding that Mrs. Brown was not a fit and proper person to have the custody. There was testimony that she had suffered from attacks of epilepsy and that one so afflicted might suffer further attacks. There was also evidence that when Mrs. Brown announced her intention to marry Mr. Cool and her parents and brother opposed it, she stated to her brother that she had to marry him, and that she did not care whether she had the children or not; and that she then turned them over to their father. Her conduct in taking action in Oregon to secure custody, after joining in a stipulation in California court that custody be transferred from her to the father, and knowing that her possession of them in Oregon was only for the vacation period, and the further fact that after leaving California in 1945 she had for some three years evinced little interest in her offspring until she and her husband took them away in 1948 under the circumstances above set forth, constituted sufficient grounds for the only substantial change in the previous order of the Siskiyou County court, to wit: that the children should not be taken out of California. The Siskiyou County court originally had jurisdiction of the parties and the children, where all had resided for several years. It amended its interlocutory decree by agreement and request of the parties, and the final decree was based upon the interlocutory decree as amended. The children remained with the father in conformity with those decrees, without protest by the mother; and Mrs. Smith, when she took them to Oregon some three years later, well knew that she was entitled to keep them with her only until the end of vacation period. At the time of the proceeding before us the children were in California, and in their father's custody in conformity with the prior decrees.

Both the father and the mother invoked the jurisdiction of the court to determine whether the father's custody should continue. █ It had jurisdiction of the action, the parties and the children; and its findings to the effect that the best interests of the children require that they be left with the father, that he is a fit and proper person to have such custody, which is conceded, and that their mother is not, are sustained by sufficient evidence.

The record does not show Mrs. Smith's complaint filed in Oregon, nor does it appear what evidence was there produced; particularly it does not appear that the Oregon court was made aware of plaintiff's stipulation made in California that Mr. Brown should have custody. There was evidence that Mrs. Smith is of a nervous temperament, and her instability is apparent from the record. Under these circumstances no citation of authority is necessary to justify our affirmation of the orders from which this appeal was taken.

The orders are, and each of them is, affirmed.

Van Dyke, J., and Deirup, J. pro tem., concurred.