[Civ. No. 15881. First Dist., Div. One. Aug. 16, 1955.]

BARBARA R. SMITH, Appellant, v. WALTER G. SMITH, Respondent.

*Assigned by Chairman of Judicial Council.

Edises, Treuhaft, Grossman & Grogan, Bertram Edises, Robert E. Treuhaft, Kretsmer & Landisman and Joseph Landisman for Appellant.

Fitzgerald, Abbott & Beardsley, Robert A. Rutledge, Carlson, Collins, Gordon & Bold, John Ormasa, Mabel Walker Willebrandt and Dwain L. Clark for Respondent.

WOOD (Fred B.), J.—The custody provisions of the decree of divorce of the parties were modified February 9, 1953, by awarding defendant the custody of their minor children, Amanda and Eric, with the right to take them to his home in Salt Lake City, plaintiff to have the right to visit them at all reasonable hours.

The interlocutory decree, filed July 8, 1949, awarded plaintiff the custody of Amanda (who was born in 1942), gave defendant the right of visitation and ordered him to pay plaintiff $50 a month for the support of Amanda. The interlocutory decree was silent at to Eric for he was not born until October 30, 1949. Its provisions were carried into the final decree of July 14, 1950, without change.

Plaintiff resides in Berkeley, California; defendant, in Salt Lake City, Utah. Each remarried in 1951. Amanda spent the summers of 1950, 1951 and 1952 with defendant in Salt Lake City.

The major question upon this appeal is whether or not the trial court committed an abuse of discretion when it gave the father custody of the children. A wide measure of discretion is vested in the trial court, in the exercise of which the "court

is to be guided by the following considerations: (1) By what appears to be for the best interests of the child and if the child is of a sufficient age to form an intelligent preference, the court may consider that preference in determining the question; (2) As between parents adversely claiming the custody, neither parent is entitled to it as of right; but other things being equal, if the child is of tender years, custody should be given to the mother; if the child is of an age to require education and preparation for labor or business, then custody should be given to the father." (Civ. Code, § 138.)

■ "An abuse of discretion must be clearly established before the reviewing court will interfere with an award of custody. (*Wolfe* v. *Wolfe*, 30 Cal.2d 1, 5 [180 P.2d 345]; *Munson* v. *Munson*, 27 Cal.2d 659, 666 [166 P.2d 268]; *Prouty* v. *Prouty*, 16 Cal.2d 190, 191 [105 P.2d 295].) ■ The trial court is given wide latitude of discretion in determining whether other things are equal within the meaning of the code section. (*Taber* v. *Taber*, 209 Cal. 755, 756 [290 P. 36].)

■ It is the welfare of the child and not the shortcomings of the respective parties which is determinative. (*Washburn* v. *Washburn*, 49 Cal.App.2d 581, 588 [122 P.2d 96].)" (*Clarke* v. *Clarke*, 35 Cal.2d 259, 261-262 [217 P.2d 647]. See also *Crater* v. *Crater*, 135 Cal. 633, 634-635 [67 P. 1049]; *Fine* v. *Denny*, 111 Cal.App.2d 402, 403 [244 P.2d 983]; *Hamilton* v. *Hamilton*, 104 Cal.App.2d 111, 117 [231 P.2d 69]; *Morgan* v. *Morgan*, 103 Cal.App.2d 776, 777 [230 P.2d 130]; *Ludlow* v. *Ludlow*, 89 Cal.App.2d 610, 612-613 [201 P.2d 579]; *Di Giorgio* v. *Di Giorgio*, 87 Cal.App.2d 576, 580 [197 P.2d 213].) ■ "The rule which obtains in this class of cases is the same as in other judicial determinations of issues of fact, and similar presumptions and intendments must be indulged." (*Lefebvre* v. *Lefebvre*, 48 Cal.App. 483, 485 [192 P. 76].)

In the instant case considerable evidence was introduced relating to the capabilities of the parties to care for and educate the children and as to which should have custody for that purpose. Our review of the record* convinces us that there is substantial evidence to support a rational inference that placing the children in the custody of their father was for their best interests and that the trial court was prop-

---

*We use the word "record" advisedly, as including only that which appears in the clerk's transcript and the reporter's transcript upon this appeal and in the exhibits which were put in evidence at the hearing in the trial court.

erly guided by the considerations prescribed by the statute and the judicial decisions which interpret and apply the statute.

For example, there is evidence tending to show that Amanda is subject to nervous tension in her mother's home and the environment it provides, from which she is free when living with her father; that she is happier when visiting her father and has indicated reluctance to return to California; that only through the father will either child have contact with its relatives, maternal as well as paternal, because the mother is estranged from and by her own admission does not communicate with her own relatives (the parents grew up in Salt Lake City and it would appear that many of the relatives, including the maternal and the paternal grandparents, live there); that wider and richer opportunities for their educational and social development are available to the children in their father's than in their mother's home; that living conditions are crowded and cramped in the mother's home and that conditions of sanitation and cleanliness are substandard in the home where Eric and his half-brother are placed during the hours that his mother is absent at work, during which period each working day both Eric and Amanda are without the companionship of their mother.** We observe, too, that the stepmother presented herself to the scrutiny of the court, took the witness stand, professed deep affection for Amanda with whom she had become well acquainted and expressed a warm welcome for both Amanda and Eric in her home. The stepfather, however, did not present himself to the court, did not take the witness stand, did not give the court the benefit of his thoughts on these subjects, did not express his feelings toward these children, nor voice a welcome for them in his home.

It is unnecessary and would serve no purpose to summarize the evidence in detail. It sufficiently appears that we would be acting in excess of our authority were we, upon the record before us, to disturb the determination made by the trial court.

---

**The stepfather is employed but about one-third of the time and contributes about $1,200 a year to the family income. The mother works from 8 to 4:30 five days a week. Her take home pay is $185 per month and she pays $110 a month to a neighbor for the day care of Eric and his half-brother, the child of her second marriage.

The father receives $145 a month in the form of a war service disability pension and in addition earns about $225 a month in his profession as a teacher of music, conducted principally at his home. The stepmother also teaches music.

■ Plaintiff would discount as hearsay certain testimony to the effect that the stepfather was arrested for gambling on several occasions. That testimony went in without objection, indeed was elicited by plaintiff's cross-examination of the defendant. It thereby became competent evidence. Moreover, plaintiff's counsel made no effort to refute it by calling the stepfather to the stand, or otherwise.

■ In addition to considering the evidence in the record, the trial judge spoke with Amanda in chambers. He did so with the knowledge and consent of all counsel. The information received by him during that interview was evidence in the case which is not included in the record. As such, it furnishes additional support for the order but is not available for review. (*Swenson* v. *Swenson,* 101 Cal.App. 440, 446 [281 P. 674]; *Young* v. *Young,* 132 Cal.App. 301, 303 [22 P.2d 564]; *Morris* v. *Morris,* 121 Cal.App.2d 707, 709 [264 P.2d 106].) Such evidence is quite similar to the view which a trial judge upon occasion takes of property. ■ When the judge takes such a view with consent of counsel, it is " " 'evidence in the case and ''may be used alone or with other evidence to support the findings.'' ' '' (*Stegner* v. *Bahr & Ledoyen, Inc.,* 126 Cal.App.2d 220, 225 [272 P.2d 106].)

Plaintiff claims prejudicial error in the asserted erroneous refusal of the court to allow inspection of a report which had been prepared by one of defendant's witnesses. ■ The witness had gone over the report prior to coming to court but had not during direct examination used it to refresh her recollection. That did not entitle the plaintiff to see the report and cross-examine the witness upon it pursuant to the provisions of section 2047 of the Code of Civil Procedure. (*People* v. *Gallardo,* 41 Cal.2d 57, 66-68 [257 P.2d 29]; *People* v. *Humphries,* 127 Cal.App.2d 131, 134-135 [273 P.2d 562].) During cross-examination the witness was asked if what she had testified to was what she had observed while looking through a window on November 19th. She replied she did not believe she had testified it was on the 19th. Asked when she looked through the window, she replied, ''Several occasions between November 5th and November 25th . . .'' Asked if she had included in the report what she saw through the window, she did not remember. The cross-examiner then invited her to look at the report, upon doing which she said, ''On November 25th when I looked through the window I did include what I saw in the Taylor home in the report. It is here, part of it, at least.'' Defendant's counsel thereupon

cut from the report and delivered to plaintiff's counsel a portion thereof which he stated pertained to November 25th. Plaintiff's counsel demanded to see the entire report. The court offered to examine the report to ascertain if it contained anything further that would be material to the particular inquiry, but plaintiff's counsel rejected the offer.

We find no error in this refusal to allow inspection of the report. It is not a situation to which section 2047 applies. That section says: "A witness is allowed to refresh his memory respecting a fact, by anything written by himself." This witness did not so use the report which she had written. She merely used it, upon invitation of the cross-examiner, to refresh her recollection as to what she had included in the writing, not "to refresh . . . [her] memory respecting a fact" which she had observed. That is a collateral matter to which we believe section 2047 was never intended to apply. Even if that section were deemed applicable, we can conceive of no possible prejudice to plaintiff flowing from the refusal of this demand for inspection.

Plaintiff comments upon the absence of findings of fact in support of the order. The answer is that no findings are required for a custody order. (*Booth* v. *Booth*, 69 Cal.App. 2d 496, 499 [159 P.2d 93] ; *O'Connor* v. *O'Connor*, 91 Cal.App. 2d 147, 151 [204 P.2d 916].)

There was no formal written application by either party in respect to the custody of Eric but that is of no consequence because jurisdiction does "not depend upon specific allegations as to the fitness of the respective parties, or their ability or willingness to care for their offspring, nor upon a specific prayer for the custody." (*Ex parte Gordan*, 95 Cal. 374, 377 [30 P. 561].) Moreover, early during the hearing counsel agreed that the question of the custody of both children was before the court for consideration and decision.

Plaintiff further claims that the actual reason for the trial court's decision is that her present husband is a Negro. We find no sound basis in the record for any such inference. Plaintiff's argument rests principally upon asserted prejudices of the defendant. We cannot say from the record that defendant harbors such prejudices, but even if he did that would be no reason for ascribing them to the judge who tried and decided the factual and legal issues in a wholly impartial, objective, and judicial manner.

Plaintiff directs attention to the fact that defendant, with full knowledge of the legal effect of the statu-

tory stay pending this appeal, improperly and unlawfully removed Amanda and Eric from the State of California, was adjudged in contempt of this court therefor (*Smith* v. *Smith*, 120 Cal.App.2d 474 [261 P.2d 567]), and has not yet purged himself thereof. Plaintiff contends that such conduct deprives defendant of the right to be heard upon this appeal. Specifically she claims: ''Equity and justice require that he be denied an audience here; that his briefs and arguments not be considered; and that the cause be decided as if respondent were in default—as in legal effect he is.''

While we may and do take judicial cognizance of the contempt adjudication, a proceeding in this very action (see *Willson* v. *Security-First Nat. Bank*, 21 Cal.2d 705, 711 [134 P.2d 800]; *Christiana* v. *Rose*, 100 Cal.App.2d 46, 52-53 [222 P.2d 891]), there are reasons why we should not use it as a basis for reversal of the trial court's custody order.

This is not an ordinary adversary case. The personal rights of the parties are by no means the sole subject of judicial concern. Their children are the persons beneficially interested. The question ''What is for the best interests of Amanda and Eric?'' furnishes the major issue. We must not suffer the urge to punish either parent to lead to judicial action which in effect punishes these innocent children and renders for naught the inquiry so painstakingly conducted and the determination so thoughtfully made by the trial judge in exercising his function of ascertaining and declaring which of these two homes is the better equipped to foster the best interests of these children.

Also, we should be mindful of the fact that the defendant does not appear here in an active role. It is the plaintiff, not the defendant, who seeks the aid of this court in the hope of overruling the decision of the trial court. Significantly, we think, the cases which plaintiff cites in support of her position are cases in which contumacious conduct furnished the basis for denial of relief that was being requested by the contemnor. The contemnor was seeking affirmative judicial action. He was invoking the judicial process for his own benefit; e.g., he was prosecuting an appeal for the purpose of reversing a judgment or an order, or seeking a writ of mandate to compel action in his favor, or seeking prohibition to stay proceedings against him. Among such cases, cited by plaintiff, are *MacPherson* v. *MacPherson*, 13 Cal.2d 271, 277 [89 P.2d 382]; *Ross* v. *Ross*, 48 Cal.App.2d 72, 77-79 [119 P.2d 444]; and cases reviewed or cited in each.

Plaintiff makes the additional argument that defendant's contumacious conduct is itself evidence to be considered in weighing the question ''Which parent should be given custody of the children?'' But that evidence was not before the trial court when it made the order appealed from. Indeed, it had not yet come into existence. In effect, plaintiff is asking us, as a reviewing court, to take evidence (by way of judicial notice) of facts which have occurred since the trial court acted and then on the basis of such evidence make a finding which will require a reversal of the order the trial court made. That certainly is not within the purview of section 4¾ of article VI of the state Constitution or of section 956a of the Code of Civil Procedure. Prior to the adoption of those sections ''it was firmly established that an appellate tribunal in this state possessed none of the functions of a jury, and that the sole province of the court on appeal was to review the action of the trial court, correct its errors, and thus pass upon questions of law only. This was the established rule at common law.'' (*Tupman* v. *Haberkern,* 208 Cal. 256, 262 [280 P. 970].) ''Neither the constitutional amendment nor section 956a of the Code of Civil Procedure was intended to abrogate the general rule respecting the powers of the trial court in its determination of questions of fact or the rule that the reviewing court is bound by the findings of the trial court if based upon substantial evidence.'' (Pp. 265-266 of 208 Cal.) Accordingly, the Supreme Court concluded it was not the intention of section 4¾ or of 956a ''that the reviewing courts should develop generally into trial courts; that it was contemplated that the courts of appellate jurisdiction would exercise the new power sparingly and, as a general rule, would exercise it only when the purpose of the new findings was to constitute a basis for an affirmance of the judgment or a basis for a reversal of the judgment with directions to the trial court to enter a judgment for the appellant.'' (P. 269 of 208 Cal.) Assuming that the evidence of defendant's contumacious conduct is available for consideration it would have to be appraised as to its portent and effect and weighed in with all the other evidence in the case. That would present questions of fact for determination by the trier of the facts.

Significantly, it would appear that plaintiff has not found a case in which a reviewing court has done what she urges this court to do. The cases she cites, including *Green* v. *Perr,* (Mo.App.) 238 S.W.2d 924, were cases in which the trial court had given consideration to the contumacious conduct of

a parent and the reviewing court considered such conduct relevant under the circumstances of the case. That falls far short of that which plaintiff asks this reviewing court to do.

In the instant case, on June 30, 1953, during the pendency of the contempt proceeding and at plaintiff's request we ordered a stay of proceedings upon this appeal. Later, likewise at the request of plaintiff and on December 29, 1954, we issued an order vacating the stay, restoring the cause to the active calendar and authorizing plaintiff to file her opening brief. Thus, it was at plaintiff's express request that this cause came on for determination upon the merits. In making this determination we do not, of course, condone defendant's contumacious conduct. The judgment of contempt still stands and will be enforced whenever possible.

The order appealed from is affirmed.

Peters, P. J., and Bray, J., concurred.