[Civ. No. 311. Fifth Dist. June 25, 1964.]

In re SHERWOOD MAURICE WALKER on Behalf of SHAREL LYNN WALKER on Habeas Corpus.

CARMA ANN BOURLAND, Plaintiff and Respondent, v. SHERWOOD MAURICE WALKER, Defendant and Appellant.

(Two Cases.)

S. B. Gill, Dustin N. Jameson and James G. Bowles for Petitioner, and for Defendant and Appellant.

Sims & Solomon and Gabriel W. Solomon for Plaintiff and Respondent.

BROWN (R. M.), J.—This appeal originated in habeas corpus proceedings brought by a father against a mother to obtain possession of a child by virtue of a custody award made in Texas and a motion of the mother to have custody reaffirmed in her in accordance with the custody provisions of a prior California divorce decree. From an order awarding custody to the mother, the father has appealed.

The facts are as follows: Sherwood Maurice Walker, hereinafter referred to as petitioner, and Carma Ann Bourland, formerly Walker, hereinafter referred to as respondent, were married in June 1953. A daughter, Sharel Lynn Walker, was born to them in September 1954. Respondent subsequently instituted a divorce action against petitioner in the Superior Court of Kern County, California, and, on November 26,

1956, an interlocutory decree granted her a divorce and awarded custody of Sharel to her, petitioner to have the right of reasonable visitation with his daughter with no prohibition against removing her from the State of California. These provisions were carried into a final decree of divorce entered on January 27, 1958.

At the time of separation Sharel was 9 months of age. Respondent returned with the baby to the home of her parents, Max and Rachel Read, in Bakersfield. She obtained gainful employment and Mrs. Read cared for the baby during the mother's working hours.

Petitioner married Sylvia Pike in February 1959. Mike and Wesley, two sons born to them, and Sylvia's daughter, Linda, issue of a prior marriage, reside with them in Texas.

Respondent married John Bourland in September 1959, and shortly thereafter removed to Santa Barbara, California. Stephanie, a daughter, was born to them in June 1960. Sharel, the child subject of this controversy, remained primarily in the physical possession of the Reads.

In June 1960, petitioner and his second family visited the Reads and Sharel in Bakersfield for about a week, then, with the knowledge of respondent and the consent of the Reads, took Sharel for a two-week visit to their home in Texas. In June 1961, under similar circumstances, Sharel visited in petitioner's Texas home for six to seven weeks. In June 1962, again with the knowledge of respondent and the consent of the Reads, petitioner removed the child to Texas for a summer visit. However, on this occasion he refused to return the child to California or deliver her to either the Reads or the respondent when they journeyed to Texas for the purpose of obtaining a return of the child. He initiated proceedings in Texas to effect a custodial change. Respondent sought to obtain possession of the child by an application for a writ of habeas corpus. These proceedings having been consolidated, the Texas court, after a full hearing and with both parents and child before it, found that the child's best welfare required that it award custody to petitioner. At that time the child was both domiciled and resident in California although she was physically visiting in Texas. There was an express finding that petitioner was a fit person to have custody and no finding, express or implied, that respondent was unfit or not a suitable custodian. The decree, entered on October 9, 1962, awarded custody of Sharel to petitioner, specified respondent's right of visitation solely within the State of Texas

and prohibited removal of the child from that state. In violation of that prohibition respondent, aided by Rachel Read, removed Sharel to California about November 11, 1962. Respondent was indicted by a Texas grand jury, charged with kidnaping and was arrested in California about December 4, 1962. Subsequently, the State of California denied a request for extradition to Texas. The criminal charge against respondent is presumably still pending in Texas. Her appeal from the Texas decree was dismissed by the Court of Civil Appeals of Texas for failure to return the child to Texas pending determination of the appeal.

In April 1963, petitioner initiated the present proceedings in Kern County by an application for a writ of habeas corpus. On the fifth day of the hearing thereon an order was made pursuant to stipulation made in open court permitting respondent to file in the original divorce action a motion for custody, child support and other relief, consolidating the motion with the habeas corpus proceeding for hearing, all testimony theretofore received and all evidence theretofore adduced applying thereto.

At the conclusion of the sixth day of hearing, the court awarded custody of the child to respondent. Petitioner appealed.

Petitioner first contends that the trial court erred in failing to give full faith and credit to the Texas decree. It is argued that under the full faith and credit clause of the federal Constitution, a custody decree of a sister state is res judicata as to all issues raised and determined; that, in order to justify a change of custody a showing of changed circumstances must be made; and that a California court should not grant relief to a parent who has brought a child into this state in violation of the foreign decree.

### Full Faith and Credit

■ The rules governing application of the full faith and credit clause are not generally applied strictly by the courts of this state to custody decrees of other states and countries. This is so because a custody decree is unique and does not fit itself within the mold cast by the full faith and credit clause. Its very nature precludes that degree of permanence and finality requisite for strict application of principles commanded by that clause. ■ Such decrees are generally enforced as a matter of comity (*Foster* v. *Foster*, 8 Cal.2d 719, 726 [68 P.2d 719]; *In re Memmi*, 80 Cal.App.2d 295, 299 [181

P.2d 885]; *In re Gi,* 134 Cal.App.2d 479, 484 [286 P.2d 364]). ■ As has frequently been said, " 'The child being within this jurisdiction, the courts of this state are not precluded by any judgment or order of a sister state from inquiring into and determining in its own behalf what are the best interests of the child.' " *(Foster* v. *Foster, supra,* 8 Cal.2d at p. 726; see *Crabtree* v. *Superior Court,* 197 Cal. App.2d 821, 828-829 [17 Cal.Rptr. 763]; *Dotsch* v. *Grimes,* 75 Cal.App.2d 418 [171 P.2d 506].)

The case of *Leathers* v. *Leathers,* 162 Cal.App.2d 768 [328 P.2d 853], contains a comprehensive discussion of the effect the courts of this state have given to foreign decrees involving custody of children in varying factual situations. At page 775, the court said: "Interestingly enough, the bulk of cases in which recognition of a decree of a sister state was refused, although there was no showing of changed circumstances, involved foreign decrees which attempted to affect custody *lawfully* held by a resident of the forum or a bona fide resident child. [Citations.]"

(See also *Brown* v. *Brown,* 104 Cal.App.2d 88, 92-93 [230 P.2d 651].)

### The Changed Circumstances Rule

A narrower view of the "changed circumstances" rule was taken in the older cases where it was held that an essential ingredient of a custodial change hearing was a showing by the movant of a substantial change of circumstances affecting the welfare of the child. *(Stagliano* v. *Stagliano,* 125 Cal.App.2d 343 [270 P.2d 91]; *In re Marshall,* 100 Cal. App. 284, 286 [279 P. 834]; *Moon* v. *Moon,* 62 Cal.App.2d 185, 186 [144 P.2d 596]; *Washburn* v. *Washburn,* 49 Cal. App.2d 581, 587 [122 P.2d 96]; *Olson* v. *Olson,* 95 Cal.App. 594, 597 [272 P. 1113].)

■ But many California cases, both old and new, indicate a broader view and a showing of changed circumstances is no longer an inflexible requirement. The rule is now said to be subject to exceptions where the welfare of the child requires it. *(Goto* v. *Goto,* 52 Cal.2d 118, 123 [338 P.2d 450]; *Foster* v. *Foster, supra,* 8 Cal.2d 719, 728; *Immerman* v. *Immerman,* 176 Cal.App.2d 122, 125 [1 Cal.Rptr. 298].) In *Kelly* v. *Kelly,* 75 Cal.App.2d 408, 415 [171 P.2d 95], it is said, " . . . the question of 'changed circumstances' is but another form of evidence which the court may consider in the exercise of its discretion to hear and decide the question of

modification of custody orders previously made." In *Dotsch v. Grimes, supra,* 75 Cal.App.2d 418 at page 421, the court said: "If, as it has been repeatedly held, the welfare and best interest of the child are the paramount concern of the court, then what governs is not the rule of 'changed circumstances,' but what at the time of the hearing is, in the sound discretion of the court, for the child's welfare." And in *Stack v. Stack,* 189 Cal.App.2d 357, at page 370 [11 Cal.Rptr. 177], it was said: "The mother's principal reliance is upon the change of circumstances 'rule.' As we have seen, it is no longer a rule, if it ever was one." (See *Hoffman v. Hoffman,* 197 Cal.App.2d 805, 814 [17 Cal.Rptr. 543].)

Several recent cases have held that where, as in this case, the trial court has modified a prior custody decree, the rule that the movant must show a change of circumstances is inapplicable. It is said that the rule applies only where the court has refused a modification and it is contended the denial constituted an abuse of discretion. To justify the contention there must be a showing of changed circumstances (*Fauble v. Fauble,* 219 Cal.App.2d 682, 686 [33 Cal.Rptr. 470]; *Hoffman v. Hoffman, supra,* 197 Cal.App.2d 805, 811; *Stack v. Stack, supra,* 189 Cal.App.2d 357, 368-370; *Harris v. Harris,* 186 Cal.App.2d 788, 791-792 [9 Cal.Rptr. 300]; *Frizzell v. Frizzell,* 158 Cal.App.2d 652 [323 P.2d 188]). The rule has not been applied where both parents were found fit. (*Briscoe v. Briscoe,* 221 Cal.App.2d 668, 673 [34 Cal.Rptr. 663]; *Hoffman v. Hoffman, supra; Harris v. Harris, supra.*)

The *leitmotif* of all of the cases dealing with child custody is that the primary, paramount and controlling consideration is the welfare of the child. That question is directed to the discretion of the trial court and in making its determination the court has a broad latitude. Its ruling will not be disturbed by a reviewing court, a clear showing of abuse absent, and every presumption supports the reasonableness of the decree. (*Sanchez v. Sanchez,* 55 Cal.2d 118, 121-122 [10 Cal.Rptr. 261, 358 P.2d 533]; *Gudelj v. Gudelj,* 41 Cal.2d 202, 208-209 [259 P.2d 656].)

That the trial judge was primarily motivated by a sincere concern for the welfare of Sharel is demonstrated by his statements made from the bench that the principal issue in the case is what is for the best interests of the child, and his patience throughout a six-day hearing in permitting both sides to adduce detail evidence relating to that issue. The court heard testimony from both parents, both stepparents,

the maternal grandparents, school and private teachers and neighbors.

The generous amount of testimonial evidence received by the court shows that both parents, both stepparents, and both maternal grandparents love Sharel and she loves all of them. Sharel is a healthy, happy, well-adjusted and well-disciplined child. She is a top student and has acquired an impressive number of A grades. She has had the benefit of private lessons in ballet, music and Spanish. There was evidence tending to show that the homes of both parents are suitable. Her mother and stepfather reside with her half-sister in a three-bedroom home which they are purchasing, located in Santa Barbara, where Sharel will have her own room. Her stepfather is an executive with a large corporation, earning in excess of $700 monthly and entitled to numerous other benefits. His history with his employer indicates that his business and financial position will continue to favorably advance. Her mother remains at home and can devote her time and attention to the family.

Her father and stepmother reside with her stepsister and two half-brothers in a three-bedroom home which they are purchasing, located in Texas. Her father is gainfully employed and earns $750 monthly. During the brief weeks Sharel visited the home in the summers of 1960, 1961 and 1962, her stepmother willingly undertook her care, assisted in her training, and made some of her clothes. The stepmother has made dresses at other times and sent them to the child in California.

There are, however, additional factors which tip the scales in favor of the order here under consideration. ▪ A strong factor to be considered in a custody case is stability or status quo of the subject child. ▪ Sharel has lived in California at least since she was 9 months of age. That her relationship with her mother, stepfather and maternal grandparents is a close and devoted one cannot be gainsaid. To them she has looked for her upbringing and her security. The record does not contain evidence of any personal contact between the child and her father from the time she was 9 months of age until she was almost 6 years of age. Since then she has visited him only briefly in the summers of 1960, 1961 and 1962. Under the Texas decree, Sharel would be removed from the state which has been for so long her domicile to an area virtually unfamiliar to her. While there is testimony that her visits to her father were happy ones, the matter of

her permanent residence with him would be experimental. Her ties to her natural mother and maternal grandparents whom she holds dear would be severed. From the Texas border inland she would walk a path her mother dare not follow, for in that state her mother is subject to criminal liability. It is unquestionably not in the child's best interests to be deprived of all association with her mother, who has never been found to be unfit. There are cases which seem to indicate that a court may transfer custody on the ground that the parent having custody proposed to remove the child from the domiciliary state. (See cases compiled in *Stack* v. *Stack, supra,* 189 Cal.App.2d 357, 367.)

A second factor is that respondent has a statutory rule to aid her, which the court may consider along with other evidence. Section 138 of the Civil Code establishes the standard for awarding custody of a minor child as (1) what appears to be for the best interests of the child; and (2) other things being equal, if the child is of tender years custody should be given to the mother. In *Coddington* v. *Coddington,* 210 Cal.App.2d 96, at page 100 [26 Cal.Rptr. 431], the court said: "In determining whether other things are equal within the meaning of this rule the trial court is necessarily allowed a wide latitude in exercising its discretion. Its discretion will not be reversed on appeal unless the record presents a clear case of abuse." We cannot say the trial court abused its discretion in determining anew the question of proper custody unaffected by the Texas decree.

## Doctrine of Unclean Hands

We are thus brought to the perplexing problem created by the respondent's conduct in removing Sharel from Texas and bringing her to California, in acknowledged violation of the provision embodied in the Texas decree prohibiting such removal.

Petitioner contends that, where a child is brought into this state in defiance of the decree of a sister state, a showing of a change of circumstances materially affecting the best interests of the child is a prerequisite to a modification order. He relies on *Foster* v. *Foster, supra,* 8 Cal.2d 719; *In re Bauman,* 82 Cal.App.2d 359 [186 P.2d 154]; *In re Memmi, supra,* 80 Cal.App.2d 295; *In re Kyle,* 77 Cal.App.2d 634 [176 P.2d 96]; and *In re Marshall, supra,* 100 Cal.App. 284. It is true that there is decisional law of this state to the effect that our courts may refuse to reexamine a custody

decree of a sister state where there has been misconduct or malfeasance on the part of the parent seeking relief unless there is a showing of changed circumstances, or at least until the child is redelivered to the custodial parent. But a close reading of the cases on which petitioner relies and others dealing with the subject discloses that this practice, too, is a matter of judicial discretion. No language contained in any of those cases may be construed as formulating an absolute rule. ▮▮▮▮ An act of misconduct or malfeasance is, of course, related to the fitness of a parent to be a suitable custodian and the trial judge must delicately balance that factor with all other evidence before him in properly exercising his discretion.

In *Smith* v. *Smith*, 135 Cal.App.2d 100 [286 P.2d 1009], where the defendant had removed the children from the State of California in violation of a statutory stay, and had been adjudged in contempt of the appellate court, that court nevertheless determined the appeal on the merits. A modification order awarding custody to the defendant was affirmed. At page 107, the court said: "While we may and do take judicial cognizance of the contempt adjudication, a proceeding in this very action [citations], there are reasons why we should not use it as a basis for reversal of the trial court's custody order.

"This is not an ordinary adversary case. The personal rights of the parties are by no means the sole subject of judicial concern. Their children are the persons beneficially interested. The question 'What is for the best interests of Amanda and Eric?' furnishes the major issue. We must not suffer the urge to punish either parent to lead to judicial action which in effect punishes these innocent children and renders for naught the inquiry so painstakingly conducted and the determination so thoughtfully made by the trial judge in exercising his function of ascertaining and declaring which of these two homes is the better equipped to foster the best interests of these children."

In this case the court found that, at the time defendant initiated the custody proceedings in Texas, he was "then and there wrongly asserting custodial rights over said child notwithstanding that said mother was ... entitled to custody of said child." The finding did not, as defendant contends, ignore findings made by the Texas court. In the court below defendant raised the question of unclean hands on the part of respondent based on the removal of the child from Texas,

a circumstance which occurred after the decree of that state was entered. Respondent countered with a charge that the hands of petitioner were unclean. Petitioner's own testimony showed that he consulted an attorney in Bakersfield in 1960 when he reestablished contact with Sharel; that in 1961 he again consulted an attorney in Texas, and again in 1962, shortly after arriving in Texas with the child, he for a third time consulted with an attorney; and that all of these consultations related to a possible change of custody suit. Nevertheless, in 1962, he represented that he wanted to take the child to Texas for a mere visit. Although no definite date for her return was agreed upon, his conduct as a whole showed an implied promise to return her to California. He refused to return the child to the respondent, who he well knew had custody under the California divorce decrees. In his memorandum opinion the trial judge points out that defendant's own testimony relative to the various consultations with attorneys coupled with the fact that he waited until the child's visitation with him in Texas in 1962 to bring his action gives rise to a strong suspicion that he had laid the groundwork for a change of custody suit in a forum which would put the mother at a disadvantage. The trial judge then remarks, "Her unclean hands, if any, were invoked by the action of the father."

There is nothing in the record to indicate that the matters above mentioned were placed before, or considered by, the Texas court at the time it made its finding. The finding here made is not therefore in conflict with the findings of the Texas court. It is merely a finding that the petitioner's own misconduct as it relates to respondent bars him from asserting the doctrine of unclean hands as against the respondent.

Nothing which we have here said is intended to constitute a departure from the practice adopted by our courts of refusing, in the exercise of judicial discretion, to change a foreign custody decree where the subject child has been brought into this jurisdiction surreptitiously and in violation of that decree, at least until the child has been redelivered to an innocent custodial parent. But under the facts of this case where petitioner took the child from California, which originally had jurisdiction of the parties and the child, and where the child and the custodial parent resided for many years, to Texas, knowing that he was entitled to possession only for a visitation period and refused to return the child to California or redeliver her to respondent in

Texas, his conduct justified the trial court in refusing to apply the doctrine of unclean hands.

### Adverse Witnesses

 Petitioner charges that the trial court erred in its ruling that Mrs. Read could not be called by him as an adverse witness under the provisions of section 2055 of the Code of Civil Procedure. His theory is that Mrs. Read comes within the purview of that section either as the "agent" of respondent or as a "person for whose immediate benefit such action or proceeding is prosecuted or defended." We need not decide the point since no prejudice has been shown and the record discloses none. Naked statements of prejudice will not suffice. Although the trial judge refused to permit petitioner to call Mrs. Read under section 2055, he ruled her to be a hostile witness and permitted leading questions. When respondent subsequently sought to cross-examine the witness the court, with the statement that she was obviously friendly toward respondent and hostile toward petitioner, made her the witness of the respondent, thus foreclosing questioning by respondent's counsel under the rules governing cross-examination and shifting that right to petitioner. Thereafter, during cross-examination by petitioner's counsel, the court, with its eyes fixed on what was in the best interests of Sharel and cognizant of the fact that there was no jury to be influenced, permitted a wide latitude in the cross-examination of Mrs. Read which elicited minute and sometimes trivial details of the child's life. The claim of error in this respect is without merit.

### The Findings

Petitioner complains because the trial court failed to adopt certain findings specifically requested by him, and one conclusion of law which he proposed. It is true, as is pointed out, that by the 1959 amendment to section 634 of the Code of Civil Procedure a litigant dissatisfied with the findings proposed by the prevailing party may file objections, propose counterfindings, and make a request for special findings. However, the section does not, of course, embody a statutory requirement that any of such proposals be adopted by the court. Moreover, there is authority for the statement that "no findings are required for a custody order." (*Smith* v. *Smith, supra*, 135 Cal.App.2d 100, 106.) In *Harriman* v. *Tetik*, 56 Cal.2d 805 [17 Cal.Rptr. 134, 366 P.2d 486], the trial court signed findings proposed by the defendant within

two days after they were submitted and thereafter refused to consider the findings requested by the plaintiff. The Supreme Court, at page 810, said: "Section 634, however, 'has on numerous occasions been held to be merely directory and not mandatory.'" It was there held that failure of the trial court to consider the special findings requested by the defendant did not constitute prejudicial error requiring reversal.

We have considered the petitioner's contentions on this point and find them to be without merit.

We have not ignored the remaining arguments made by petitioner on this appeal and not specifically mentioned herein. They are grounded on his own construction of all the evidence in his favor, or relate to the credibility of witnesses. In a custody hearing it is the province of the trial judge to weigh the evidence and exercise his discretion. It is he who has talked with and viewed the litigants and witnesses and has assessed the evidence. Moreover, he is well situated to gain impressions from the demeanor of witnesses which the cold record does not furnish to a reviewing court. Thus, even where minds may reasonably differ, it is his discretion and not that of a reviewing court which must prevail. (*Coil* v. *Coil*, 211 Cal.App.2d 411, 415-416 [27 Cal. Rptr. 378].)

The order is affirmed.

Stone, J., concurred.

Conley, P. J., dissented.