413 P.2d 744

In the Matter of the GUARDIANSHIP OF the person of Dana Lynn RODGERS, a Minor.

In the Matter of the application for a writ of habeas corpus for Dana Lynn RODGERS, a Minor.

James Lee RODGERS, Appellant,

v.

Catherina DE ARMAN, Appellee.

No. 8706 PR.

Supreme Court of Arizona.

En Banc.

April 27, 1966.

Skousen, McLaws & Skousen, Mesa, for appellant.

Cavness, DeRose, Senner & Foster, Phoenix, Beelar & Tippett, Globe, for appellee.

BERNSTEIN, Vice Chief Justice.

This matter comes to us from the Superior Court of Gila County on a petition for a writ of certiorari, consolidated by the trial court with a writ of habeas corpus. The Court of Appeals, division two, decided the matter by written decision, In re Guardianship of Rodgers, 2 Ariz.App. 51, 406 P.2d 253, and the case is now before us on a petition for review, A.R.S. § 12–120.24, 17 A.R.S. Rule 47(b), Rules of the Supreme Court.

This case involves litigation between a mother and a father over custody of their eight year old daughter. The Superior Court, after consolidating a hearing on a writ of habeas corpus brought by the father and a petition for appointment of guardian made by the mother, awarded custody to the mother.

The mother and father were divorced in Graham, Young County, Texas, on May 25, 1961. The custodial provision of the divorce decree awarded custody of the couple's two children to the father for three months of each year. The father was to have custody for June, July and August with the mother retaining custody from September through May of each year.

On August 11, 1961, the mother remarried. She and her present husband lived in Texas until sometime around May 15, 1964, when they moved to Winkleman, Arizona. Around the end of July, 1964, the couple moved to Globe.

Under the terms of the Texas divorce, when the children were under their father's custody they were to live in the household of his parents, their grandparents. At the end of July, 1964, the mother and her husband went to Terrell, Oklahoma, the residence of the father's parents, to bring her children back to Arizona. When informed that her son and daughter were living with the father's sister, the mother left for Nakoma, Montague County, Texas, with her husband to get custody of them.

At Nakoma the mother was refused her two children and served with a subpoena to appear in court in three days, on September 4, in regard to a custody hearing. The mother hired Texas counsel to represent her, but because of the immediacy of the hearing and the distance between Winkleman, Arizona and Nakoma, Texas,

she was without the assistance of witnesses.[1]

On September 4, the Texas court granted temporary custody to the father and enjoined the mother from interfering with his custody during the pendency of the cause. On September 29, the mother and her husband left the jurisdiction with the daughter.

On October 8, 1964, the Texas action came on regularly for trial. Being in Arizona the mother and child were not present, nor had they retained counsel. On October 9, the Texas court, in a written judgment, found that the mother was in default and that since there had occurred a change of conditions the father was to have complete custody of the child. There was no appeal from this judgment.

When the Superior Court of Gila County heard the oral arguments on the writ of habeas corpus and the petition for appointment as guardian it made the following findings:

"It is further the finding of the court that the decree, [the Texas decree] * * * is void on its face in that it purports to modify the divorce decree entered in a different county, and on its face does not recite the jurisdictional facts necessary to constitute jurisdiction to change an order of custody.

"Further, the finding of the Court that the evidence shows the present conditions and circumstances of the petitioner, * * * are adequate and are in the best interest of the child."

The father contends the Texas decree of October 9, 1964, awarding him full custody of the children is entitled to be considered res judicata under the full faith and credit clause of the Federal Constitution, Art. 4, § 1, in the absence of a finding in the court below of a change of circumstances.

A custody decree precludes, by its very nature, that degree of permanence and finality requisite for a strict application of the full faith and credit clause. A custody provision under a divorce decree must be given full faith and credit in other states as to the right of the custody of a child *at the time and under the circumstances of its rendition.* Foster v. Foster, 8 Cal.2d 719, 68 P.2d 719.

"Whatever effect, the Full Faith and Credit Clause may have with respect to custody decrees, it is clear, as the Court

---

1. As to the facts surrounding the September 4 hearing, the mother had this to say:
   "His mother and his sister * * * had contacted the law there in Munster to claim we were drunk at the time."
   ' * ' * * * *

   "The Chief of Police in Bowie said he had a phone call from me, that he couldn't say it was me, and that [my present husband] and I were having trouble * * * there was no such phone call on my part."

stated in Halvey, 'that the State of the forum has at least as much leeway to disregard the judgment, to qualify it, or to depart from it as does the State where it was rendered. * * *'" Kovacs v. Brewer, 356 U.S. 604, 607, 78 S.Ct. 963, 966, 2 L.Ed.2d 1008.

The best interests and welfare of the child would be subverted if an ironclad rule to the contrary were to be accepted. Texas, the jurisdiction from which the child was taken, also gives full faith and credit to foreign custody decrees unless a change of circumstances has occurred. Bull v. Wilson, Tex.Civ.App., 362 S.W.2d 662.

■ However, we do not want to be understood as suggesting that parties to such litigation may, after a court has heard evidence upon their fitness and made a ruling, immediately invoke the powers of a court to have it inquire into the *same* facts existing at the time of or prior to the former decree. This would permit interminable and vexatious litigation.

■ We believe the Superior Court finding that the "conditions and circumstances" of the mother "are adequate and are in the best interest of the child" is, under the facts of the case, a clear finding there was a change of circumstances.

The trial court was of the opinion that the father's evidence of the mother's past conduct (the trial below took place on October 27, 1964, and the complained of past conduct on the mother's part took place on and after August 11, 1961) was immaterial but permitted a statement for the record of what he intended to prove.

For the record the father offered to prove the mother stabbed her present mother-in-law while in Texas and as a consequence was charged with assault with intent to commit murder requiring a $5000 bond. The father also offered to prove the mother and her present husband were drunk on several occasions in the State of Texas and were jailed. As to the intent leading to the charge of assault with intent to commit murder the record indicates the mother might have been acting in self-defense. However, the Superior Court was of the belief that such evidence was presently irrelevant and did not desire to hear it developed.

The Superior Court finding, here at issue, in relation to the mother, is of such contrast with the father's description of the mother, that it leads to the inescapable conclusion the court found a change of circumstances and that the best interests and welfare of the child would be served by placing her with her mother.

■ A reading of the reporter's transcript of the proceedings shows the mother presented eight witnesses to testify on her behalf. The witnesses included a com-

munity chief of police [2] who was a neighbor of the mother, a welfare department worker [3] who was also a neighbor of the mother, a baby sitter,[4] a Baptist Church minister,[5] and a minister of a Baptist mission. This uncontradicted testimony lends meaning to and supports the court's finding. A.R.S. § 25–321 and the father's

2. Beside testifying that the child's living quarters were sufficient and the child was well behaved, this witness stated as follows:

"I think that [the child] has all the devotion a mother could give, or probably a little more so in view of the circumstances and hazards that exist."

3. This witness was married to the chief of police and while she was a neighbor to the mother, her employment with the State Department of Public Welfare wherein she prepared summaries which included home studies and child studies, particularly qualified her as a witness. Of the child she said:

"She was always dressed very well, very clean and neat, and her hair is combed."

\* \* \* \* \*

" \* \* \* she was very happy and quite well adjusted.

"There is a great deal of love in the household. If you work with people at all you can tell the difference, whether a child is wanted or not; and they love each other, and there is feeling, you know."

4. "Q And during the time you were baby sitting did you observe the conduct of the children—how they acted?

"A Yes.

"Q Could you please describe that?

"A Well, I found them very well behaved, and when I asked them to do something they immediately did it for me, and they didn't go against my wishes. They did exactly as they were told and as their mother left the information for them to do."

\* \* \* \* \*

"Q Did you ever see any liquor there in the home?

"A No, I never did.

"Q Did you observe the conduct of [the mother and her present husband] towards the children while you were there as a neighbor?

"A Yes, I have.

"Q Describe their conduct.

"A Well, I think they are very devoted parents, and if I wouldn't have known better I wouldn't know [the child wasn't the present husband's daughter] because as I say, he does treat her as his own. He is very good to her."

5. "Q Could you describe [the child], her conduct when you observed her in the home?

"A Yes, her conduct has always been one of graciousness and one of who has behaved well. Her deportment is well in the home, and yet it isn't a forced or rigid thing. It is rather a natural warm and wonderful home."

\* \* \* \* \*

"Q Have you ever seen any drinking of alcohol or any evidence of alcohol in the home?

"A No, I haven't, and probably I would have a greater opportunity in the sense that when I call I never call by announcing or calling ahead, so I am there at odd times it might seem as I do on my other calls, and I certainly could have had an opportunity because they couldn't have prepared for my coming at all.

"Q They are not aware you are coming there?

"A No."

\* \* \* \* \*

"Q What is your opinion about the mother's fitness to be the custodian of this little girl, \* \* \* ?

"A She, I believe, is quite a fit mother, one to whom I would trust my own son with at any time."

contention that there was no showing of a change of circumstances raises the issue of whether a showing of a change of circumstances is necessary before a court can alter a former custody decree. A.R.S. § 25–321 provides as follows:

"The court may from time to time after entry of final judgment, on petition of either party, amend, revise and alter the portions of the decree which relate to payment of money for the support and maintenance of the wife or the expenses of the proceedings, as may be just, and may amend, change or alter any provision of the judgment respecting the care, custody or maintenance of the children of the parties as circumstances of the parents and *welfare of the children require.*" (Emphasis supplied)

In Cone v. Righetti, 73 Ariz. 271, 240 P.2d 541 we said of A.R.S. § 25–321:

" * * * before the court has authority to change the custody of a minor child it must be shown that there had arisen a change in the conditions or circumstances *surrounding the children affecting their general welfare* and that it would be for *their best interests* that a change in custody be made." (Emphasis supplied)

■ A.R.S. § 25–321 concerns itself with the welfare of the child. Change of circumstances is merely another form of evidence which the court in its discretion may consider, In re Walker, 228 Cal.App.2d 217, 39 Cal.Rptr. 243, but the only question of consequence is whether the change or circumstances better serve the general welfare and best interests of the child. Galbraith v. Galbraith, 88 Ariz. 358, 356 P.2d 1023.

■ Since the primary, paramount, and controlling consideration is the welfare of the child, Galbraith v. Galbraith, supra; Clifford v. Woodford, 83 Ariz. 257, 320 P.2d 452, that question is directed to the discretion of the trial court and in making its determination the court has a broad latitude. Andro v. Andro, 97 Ariz. 302, 400 P.2d 105.

The evidence here was sufficient to show a change of circumstances and that the mother was a fit person to care for her daughter. Further, in that the child here is presently only eight years old we believe that A.R.S. § 14–846, subsec. B is pertinent. It provides as follows:

"As between parents adversely claiming the custody or guardianship, neither parent is entitled to it as of right, but, other things being equal, if the child is of tender years, it shall be given to the mother. If a child is of an age requiring education and preparation for labor or business, then to the father."

A perplexing problem is created by the mother's conduct in removing her young daughter from Texas and bringing her to Arizona in violation of the Texas award

of temporary custody to the father. The mother, in bringing her daughter to Arizona, violated a Texas injunction prohibiting the removal of the children from Texas.

As to these facts we are disposed towards following the approach of the State of California wherein it is said that while an act of misconduct or malfeasance should be related to the fitness of a parent to be a suitable custodian, such does not, as an absolute rule, prohibit a court from reexamining a sister state custody decree. In re Walker, 228 Cal.App.2d 217, 39 Cal.Rptr. 243. We believe when such conduct as defying a sister state custody decree occurs the trial judge must delicately weigh that factor with all other evidence before him in properly exercising his discretion. Any other holding would punish innocent children for the wrongs committed by their parents and would prevent the inquiry to be made by the trial judge in determining where the best interests and welfare of the child lie.

There was sufficient evidence here to support the trial court's finding that the best interests and welfare of the child would be served by placing her with her mother. Finding no abuse of discretion the decision of the Court of Appeals must be vacated and the decision of the Superior Court affirmed.

STRUCKMEYER, C. J., and UDALL, LOCKWOOD and McFARLAND, JJ., concur.